Lett v. City of Chicago Good morning, Your Honors, Cass Thomas Casper on behalf of Plaintiff Appellant Kelvin Lett. Your Honors, this matter is here on review of a 12B6 dismissal of Kelvin Lett's second amended complaint, where what I'm going to be focusing on today is the dismissal of count 1, his First Amendment retaliation count. I want to begin by drawing on a hypothetical that my friends across the aisle made in the Davis v. City of Chicago case. If a circuit judge or any judge were to ask a law clerk to draft a decision for the judge, but to put in the statement of facts something that is a fact and it is false, would the law clerk have First Amendment protection for refusing to do so? Contrast that hypothetical where a circuit judge asks a law clerk to do a draft decision and the law clerk and the judge agree upon the facts, but they do not agree upon the outcome, what those facts mean and dictate. Would that law clerk enjoy First Amendment protection for refusing to follow the judge's requirements as to the outcome? The latter case is the Lorenzo Davis v. City of Chicago case, which this court decided in 2018 from involving the same police agency COPA that Mr. Lett worked for, which at the time of the relevant facts here was IPRA. That case was about different evaluations of facts, and that is exactly what Judge Hamilton in this court emphasized in his concurring opinion in the Davis case. Judge Hamilton, as we've cited in the brief, emphasized that the Davis case, while he agreed with the outcome in Davis, he emphasized Davis is not a case where the investigator was asked to insert a false statement of fact in the investigative report. Davis is a case where Mr. Davis was asked to change the ultimate outcome from sustained to not sustained or not sustained to sustained. But even if this wasn't a change of the ultimate outcome, it's hard for me to see why it's different than Davis because here, what he was being asked to change, what he's alleged that he was asked to change, is a conclusion about what particular facts showed, right? That the gun was planted? We disagree with that. We allege that Mr. Lett was asked to insert a lie in the report to support a conclusion that a gun was planted. We're alleging that he was asked to insert that statement of fact in the report that there was nothing in the investigation that supported making it a lie. That is a statement of fact, not an ultimate conclusion as to how the investigation should be modeled. Well, there was a gun presumably on the person, and then the question is how that gun got there, and that's an opinion. You draw an inference. You make a decision about how the gun got there. Well, and that's one of the central errors that the district court made in this case, which is that we submit that that should be an issue for the discovery process. To what extent did Ms. Fairley review the investigative file before directing Lett to insert this fact? Did she review it at all? What did she say to Lett prior to directing him to insert this fact? Those are issues. Well, I wanted Lett to know it was a lie. Excuse me? Lett knew it was a lie. That's what we've alleged. Yes. And so whatever, it seems the group, whatever this thing that Fairley was in charge of seemed to be very taxing against the cops. It seems that that's the implication at least that I got from this, that whatever the organization was that Fairley was part of was investigating cops. That's correct. So Office of Professional Standards, which later in about 2014 became IPRA and later became COPA, was charged with investigating allegations of police misconduct. And one of the thrusts of the complaint was that Fairley was put in charge as the chief administrator of IPRA after the Laquan McDonald scandal happened. And she was, as we infer in the complaint, as we believe the discovery would bear out, she was charged with reviewing old police misconduct cases to make sure that they were properly investigated. So this entire case comes in an environment, as we pleaded in the second round of complaint, where they were already scrutinizing prior not sustained findings against, as to officers. So it comes in an environment where we believe there was at least tacit encouragement to make findings against police officers. Now that would have to be borne out in discovery, but that's the thrust of the complaint. And again, that's why we believe the district court erred, because it put this case on all fours with Davis. But Davis was about the conclusion, which fair enough, a chief administrator such as Scott Ando at the time could have read the investigative file, the witness reports, and said, I evaluate this differently than my investigator. But counsel, you're talking then, you're talking about the difference between the macro conclusion on the outcome of the report versus the micro conclusions about particular facts within the report. And you're talking about the good faith insofar as you say that discovery should be conducted to find out if her direction to insert that the gun had been planted was the result of a fulsome review, or she just said it without considering it. Those all things go to, they're Davis, and they also go to the fact that this was part of his job. He wasn't speaking as a private citizen. But we submit, actually, that there's authorities such as the Gonzalez versus City of Chicago case, which is pre-Davis, that says it does not have to be a part of your job to lie. And we also submit, as submitted in the second amended complaint, it was not a part of Kelvin Letts' job duties to lie. In paragraph 37, we laid out 10 different personnel rules of the City of Chicago. Unfortunately, they're not verbatim, but we're referencing them. And some of those I submit to the court say, City of Chicago employees shall be truthful, shall not lie. So that makes it not a part of Letts' ordinary job responsibilities to lie. So we submit that when he refused to insert a false statement of fact into his report, that's now outside of the boundaries of his job responsibilities, and he's acting as a private citizen. But all of these whistleblower cases, Garcetti and Davis, et cetera, deal with allegations that the plaintiff said that he was ordered to do something, some misconduct, right? Some misconduct on the part of the employer. And what Garcetti says and what Davis says is that if this is happening in the course of performing job duties, then the government is not, then the employee is not functioning as a private citizen. I don't see how this is different than Garcetti or different than Davis in this respect. He wasn't writing an op-ed in the Chicago Tribune trying to expose misconduct. It's different than those cases because, as I've stated, he was being asked to lie as we've pled. And that's not a part of his job duties as an employee of the citizen of Chicago. In fact- Wasn't he preparing this for, fairly, to sign and put out? It would have gone through the command channel review. He's doing this, objecting to do something. He's preparing for her. And, in effect, she's going to end up saying, I guess, or publishing or doing something, and she wants him to insert something else, and he doesn't want to. But it really doesn't get down to his First Amendment. It gets down to something he doesn't want to do, and it's fairly who's telling him this is what she wants to say, I guess. Well, it does come down to his First Amendment rights because he's now, because what he's being asked to do is to insert something that is false, and that's the whole thrust of this case. Now, ultimately, maybe at some point down the line, Fairley would have reviewed the entire case file and would have come up with a different conclusion, but what we're pleading is that at the time that this happened, that had not happened, and there was no evidence to support Lett's insertion of this, again, statement of fact, into his report. He could not do it, and that is where he's now acting as a private citizen. And by the way, these reports, we all know where they're going to go. It's likely that they're going to be used in criminal litigation. It's likely they're going to be used in civil rights litigation. It's likely they're going to be used, possibly, in police misconduct litigation. And that brings me to the Supreme Court decision in Lane v. Franks, which we submit also controls here because sooner or later, Lett is going to be called to testify under subpoena, presumably, like the- And in that situation, that principle would control, but that's because that's not part of his job to testify. He's being subpoenaed as any private citizen would, and any private citizen, any person subpoenaed by the court has a duty to supply evidence. That's not now. You're asking to- I think, ultimately, we do have to consider that, though, because what are the consequences of Lett agreeing to insert a false statement of fact? Is that he's ultimately going to be put in a position where he's on the witness stand under oath pursuant to subpoena, and he's going to have to say, I put a false statement in my report. Well, I mean, he shouldn't have done it, right? If he thought it was false, then he could have refused to do it, and yes, then the consequences of that might have been that he would have been fired. I mean, that would have been true in Davis. That would have been true in Garcetti, that if the whistleblower plaintiff refused to do the unethical action that the governmental employer demanded, then that comes at some cost, right? Well, he did refuse to do it, and that's what led to the barrage of retaliatory actions that- Right, but I'm saying your hypothetical that you're spinning out now is about him testifying in court, so you're assuming that if he lied in the report, and then he'd have to perjure himself on the stand, and I'm saying that, no, that hypothetical shouldn't play out because he shouldn't do it. Well, but there's the problem, is it's like the natural consequence of what he does in particular. We have to consider the environment he works in. He works in a police investigative agency. We know that that report, at some point, is going to come up in some proceeding. I mean, Lane v. Franks, I admit, it comes a little later in our timeline, theoretically. He's ultimately going to be put in a position where he's going to be put on the stand, and he's going to be confronted with a lie that he put in the report, and that violates the I've cited it as support for this case. A public employee should not have to be put themselves in a position where they ultimately have to take the witness stand and admit, yes, I put that lie in my report. That's why I think Lane v. Franks is a good fit. That's exactly what you expect to happen. Yes. Okay, so what if he put in what she told him, and then he goes to the stand, and he's going to just have to say, she made me do this? Well, that still reflects on his ultimate credibility, and his reliability as an investigator, because if he's subject— Well, maybe he went to keep his job or something. Well, but then that undermines his entire report and his integrity, which we submit Lane v. Franks— All right. He should have quit. Well, he shouldn't have to put a false statement of fact in his report, and we submit that that's outside of his job— Clearly, he shouldn't have had to put a false statement of fact in the report. I mean, we can take your allegations as true and say that there was misconduct, but the question is whether there's a First Amendment claim for it. Well, we get stuck on this, was he acting as a private citizen, or was he acting pursuant to his job duties? And let's just go back to the case law. I've got a couple minutes left here. You know, Davis was all about the conclusion, sustained versus not sustained. Garcetti, he was a calendar deputy whose job was to review warrant affidavits. That's what his job was, and he wrote a memo challenging the reliability of one of the warrant affidavits. That's literally what his job was. Because he drew a different conclusion about whether something was a driveway or a road, drawing a different conclusion here about whether the gun was planted or got there some other way. Right, right. But the difference is that Ceballos and Garcetti, he went out and did all that on his own. Here, Lett is being commanded by his superior officer to insert a false statement of fact, and that doesn't bode with his conscience, it doesn't bode with his view of the law. He thought it was wrong, illegal, and he refused to do it and suffered all the subsequent retaliation. And Judge Hamilton picked up on this, as I read his concurring opinion anyway, as a key distinction for future cases. He even says, this may come up again, so I want to be clear, I'm not quoting him exactly, that Davis was not asked to make a false statement of fact and put it in his reports. And of course, we cited the Jackler case as a case out of the Second Circuit. I don't know that I need to revisit it here as authority for another circuit court of appeals that has considered this issue. And finally, our own, this court has. We got to go back to the Gonzalez case, and I just want to quote this one sentence, quote, if Gonzalez were writing reports of police misconduct and his supervisors told him to rewrite the reports so as not to disclose police corruption, Gonzalez would have a First Amendment right to expose the police cover-up to the public. So that is, to be candid to the court, I read that as dictum in the Gonzalez case, I will concede that. But that is authority in this jurisdiction for the thinking that the First Amendment does provide some protection for public employees who are asked to, well, rewrite reports so as not to disclose police corruption in Gonzalez, and in our case, insert a false statement of fact not borne out by the evidence. I've got 14 seconds left, if there's no further questions, I'll yield the remainder of my time. Thank you. Thank you. Absolutely. Thank you. Good morning, and may it please the court. The district court here properly dismissed Mr. Lutz's First Amendment retaliation claim because Mr. Lutz's speech was not constitutionally protected under the First Amendment, because what went into the Independent Police Review Authority's investigative report and all of Mr. Lutz's conversations about it, what would or would not go into that report, was all speech made in the performance of Mr. Lutz's job as a governmental employee, an IPROT investigator, and it was made in the culminating work product of an investigator of just the kind that he was hired to do. He was not speaking as a private citizen, and in fact, the things he was writing in his report were being drafted for the ultimate approval of the chief administrator. He was drafting a report that would ultimately be reviewed and signed by her. He was not speaking as a private citizen. He argues that he was ordered to lie about facts. If you look at his complaint, he alleged over and over that he was asked to lie about findings, and one specific finding, a finding that a gun was planted in a case involving an officer shooting, and that does make this case just like Davis, because findings in this context have to be found by someone, and here the ultimate person with the responsibility to make that finding a fact is the chief administrator. Now, he says it's a lie because he reviewed the evidence and nothing supported that an officer planted the gun. Well, he is not, the chief administrator reviewed that and is free to evaluate the evidence on her own and disagreed, and to overrule, essentially, the view of a subordinate. That does not make it a lie. It makes it a different evaluation of what the evidence was in the investigation, and so this is not a lie about facts. It's not a lie about evidence. It's not like a case, for example, that opposing counsel relies a lot on the brief, the Jackler case, and one in which the Davis concurrence expressed concern about, this is not about falsification of evidence. There is no allegation that Ledd was ordered to falsify anything. He was not asked to make a false statement about anything he had witnessed with his own eyes, and that was a situation in Jackler, right? The police officer had made a statement about another police, that he had seen another police officer striking an arrestee, and he was being asked to change that statement. There's nothing like that here. He's not being asked to change a statement about anything he witnessed. He's not being, he was not being asked to change a statement that any other witness had made during the course of the investigation, or he was not asked to tinker with the evidence in any way, shape, or form. He is talking about a finding, what he calls a lie about the findings. Well, he knew, did he say something, I didn't know that, or he knew it was a lie? I'm sorry, I don't understand the question. I mean, when he was jotting this down, she said, put in there that the gun was planted. Right. And he said something, maybe I don't remember exactly what he said, but that he didn't know that, or he said he know that isn't true? He, he refused to put that in the report. He believed that was not supported by the evidence. So what he, he knew on his own a lot more? Whatever, she's just having him write it up, but apparently he's part of the, I don't know, the organization, and he already knew that the gun was not planted. Well, I mean, we can, the chief administrator has a responsibility to review the investigation, the investigative reports, and make those judgment calls. In any case, even if it is, even if the line investigator is the first one to, you know, accumulate all that evidence, surely he's free to say what he believes his view of the evidence is to her, but not to make the ultimate call on what the finding is going to be. It's, that is clearly. He didn't put it in there, right? He did not. He refused to put it in there, and then he was taken off the case. So, and that also leads me to, he's not, he talks about like his, his personal reputation being at stake, but he was, does not even allege that he was asked to represent that the finding was his own. It, it fell to the chief administrator to ultimately make the findings in that report and the recommendations to the superintendent of police. So, and with respect to the possibility of testifying that my opposing counsel mentioned today, he does not allege that he was fired for testimony that he did or did not provide. So, that is not, that is just not speech that is at issue in his First Amendment retaliation claim. And, of course, the possibility that he might does not convert his refusal to change that report into citizen speech. Clearly, it was speech made in the performance of his duties as a governmental employee, which makes this case on all fours with Davis. So, we are talking about the guiding principle in Davis for the majority and the concurrence was that Davis and his boss, the chief administrator, at the time, a different chief administrator, disagreed about the evaluation of evidence. And there is no difference here. Do you buy, well, obviously you don't buy, but what about the plaintiff's attempt to distinguish an ultimate conclusion in the report from the, you know, the micro conclusions along the way, like this finding of fact? Well, I mean, there is, there is the ultimate conclusion sustained, not sustained, and that, but that there are also other conclusions and they are similar under, under, as Davis explains, the important difference between lying about facts or falsifying evidence and the conclusion is that to make a conclusion, that entails evaluating the evidence and analyzing the evidence and making judgment calls. And that's the same thing when you're talking about a finding of fact. I mean, to use the court example that my opposing counsel raised, of course, if a circuit court clerks drafts finding of facts and a judge disagrees about what the, what the evidence shows, that doesn't change the fact that this is citizen speech, that it, I'm sorry, that it is not citizen speech, that the speech and the fact that it's changed by the ultimate decision maker, it's not actionable as a First Amendment retaliation claim because that speech is not protected. It is public employment speech made in the course of performing public duties. So, again, we're talking about an order to change findings as in Davis' lead speech was in and about the investigative report made pursuant to his job duties. It is not citizen speech and so the district court properly dismissed his First Amendment retaliation claim. We will rest on our brief for the remaining alternative arguments that we made, unless there are any questions. We do ask that the judgment of the district court be affirmed. Thank you, counsel. I'll give you a full minute. Thank you. Just briefly, what strikes me in hearing my opponent's argument is that we're arguing about issues that ultimately need to be determined through the discovery process, not on the face of the pleadings. Was it in a different evaluation of reports and witness statements that led to or, as we pleaded, was it her statement to Lett that Lett needed to have a more devious mind, as we pleaded in paragraph 33, to do this job and he needed to insert that, what Lett considered to be a false statement of fact. So it was inappropriate to dismiss this on the pleadings and the matter should be set for discovery. Thank you for your consideration today. Thank you. Thanks to both counsel. The case is taken under advisement.